## ROZELAAR v. UNITED STATES (No. 2432)[1]

EVIDENCE—PRESUMPTION FAVORS COLLECTOR.

Beads of various materials, strung on cotton strings of different lengths, invoiced as "necklets" and as "strings of beads," were held for marking and assessed with the additional 10 per cent duty provided by section 304 (a), tariff act of 1922. The protest, claiming the stringing to be only temporary and that the "article" of importation under section 304 (a) was the *bead*, the evidence being insufficient to overcome the presumption in favor of the collector's action in requiring the *string* of beads to be marked, was properly overruled.

United States Court of Customs Appeals, March 23, 1925

APPEAL from Board of United States General Appraisers, Abstract 47213

[Affirmed.]

*Brooks & Brooks* (*Ernest F. A. Place* of counsel) for appellant.

*William W. Hoppin*, Assistant Attorney General (*Charles D. Lawrence* and *Peter A. Abeles*, special attorneys, of counsel), for the United States.

[Oral argument January 16, 1925, by Mr. Place and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and SMITH, BLAND, and HATFIELD, Associate Judges; BARBER, Associate Judge, participating in the decision by agreement of counsel

HATFIELD, Judge, delivered the opinion of the court:

The merchandise involved in this appeal was invoiced in part as "necklets" and in part as "strings of beads." It consists of beads of various materials strung on cotton strings of different lengths. The "necklets" and "strings of beads" were not marked, at the time of importation, so as to indicate the country of origin. They were marked while in customs custody, under the direction and supervision of the customs authorities and an additional duty of 10 per cent of the appraised value of the merchandise was assessed by the collector, in accordance with the provisions of section 304 (a) of the tariff act of 1922, the pertinent part of which reads as follows·

SEC. 304. (a) That every article imported into the United States, which is capable of being marked, stamped, branded, or labeled, without injury, at the time of its manufacture or production, shall be marked, stamped, branded, or labeled, in legible English words, in a conspicuous place that shall not be covered or obscured by any subsequent attachments or arrangements, so as to indicate the country of origin. Said marking, stamping, branding, or labeling shall be as nearly indelible and permanent as the nature of the article will permit. Any such article held in customs custody shall not be delivered until so marked, stamped, branded, or labeled, and until every such article of the importation which shall have been released from customs custody not so marked, stamped, branded, or labeled, shall be marked, stamped, branded, or labeled, in accordance with such rules and regulations as the Secretary of the Treasury may prescribe. Unless the article is exported under customs supervision, there shall be levied, collected, and paid upon every such article which at the time of impor-

[1] T. D. 40786

tation is not so marked, stamped, branded, or labeled, in addition to the regular duty imposed by law on such article, a duty of 10 per centum of the appraised value thereof, or if such article is free of duty there shall be levied, collected, and paid upon such article a duty of 10 per centum of the appraised value thereof. * * *

The importer protested the action of the collector.

The report of the collector is as follows:

Nov. 15, 1923.

Respectfully referred to the Board of U. S. General Appraisers for decision.

The appraiser reported the merchandise in question not legally marked according to the requirements of section 304 of the act of 1922. Duty was assessed at 10% on the appraised value under the provisions of said section, in addition to the regular duty provided in the act of 1922.

Protest was received within the statutory time.

If the appraiser made any report to the collector it is not a part of the record before us.

The report of the collector does not disclose, nor is there any evidence elsewhere in the record from which it may be determined, how the merchandise was classified or under which paragraph it was assessed for the regular or primary duty.

The Board of General Appraisers overruled the protest.

It is claimed by the appellant that the beads were but temporarily strung on cotton strings; that the purpose of the stringing of the beads was to afford greater facility in displaying them for sale; that when the beads were strung a prospective purchaser was better able to determine whether they were properly drilled.

The evidence in the case is very unsatisfactory. The importer testified on direct examination as follows:

Q. Is this stringing a permanent stringing?—A. No, sir.
*      *      *      *      *      *      *
Q. Which you have stated to be temporarily strung. What is the purpose of bringing these beads, Exhibits 1 and 2, into the United States on strings which you have stated to be temporarily strung?—A. The purpose is to avoid 80 per cent duty, to pay 80 per cent when it should not be temporary 80 per cent—now it is 20 per cent.
*      *      *      *      *      *      *
Q. Mr. Rozelaar, in selling this merchandise to your customers in the United States do you sell it exactly in the condition as imported or do you make any alterations in it?—A. Well, I sometimes do and sometimes do not. I have sold several necklaces——

Q. What alterations do you make at those times?—A. I do everything. I sell a few beads when they want to make other necklaces longer which they already have, and when they want part of it I have sold it.

Q. Do you ever change the order or rotation of the colors?—A. Yes, sir.

Q. Is there any purpose served in stringing these beads in reference to displaying their manner of drilling—is there any purpose served with respect to displaying the character of the drilling of the beads?—A. Yes, sir.

Q. Please state what that is?—A. Sometimes the beads are not drilled right in the middle, and you can immediately tell whether they are drilled right or

not. People say they do not want to buy like that because they can not see whether they are rightly drilled.

  *   *   *   *   *   *   *

  Cross-examination:

Q. Is this green string, which has been marked " Exhibit 2," fairly representative of all the merchandise of that same character that came in this shipment?—A. Yes, sir.

Q. What type of string is that strung on?—A. What type of string?

Q. What kind of string; do you know what it is?—A. Cotton string, I should say.

Q. Do you sell that with the same string?—A. Yes, sir. I often restring with other strings.

Q. But sometimes you sell with the same string?—A. If I can sell them I do.

Q. Sometimes you restring them and sometimes you don't, according to the demands of your trade?—A. Yes, sir.

Q. And sometimes you put clasps on them?—A. Yes, sir, sometimes. I have to restring them first.

Q. When you put clasps on you have to restring them?—A. Yes, sir.

Q. Have you any idea what proportion of this particular shipment you sold as they are?—A. Well, I should say 90 per cent I sold as they are.

  *   *   *   *   *   *   *

Q. Look at the merchandise in your hand and tell me whether the beads on that string are properly bored?—A. Yes, sir; they are all right.

Q. And that is fairly representative of all in this shipment?—A. Yes, sir.

The testimony above quoted is all the testimony in the case pertinent to the issue raised by the appellant.

The importer testified that the beads were not permanently strung. However, in explanation of that statement, he said that if *he* had occasion to attach clasps to the strings of beads, it was necessary for *him* to restring them; that sometimes he sold a few beads from the strings of beads and sometimes he "changed the order or rotation of the beads" if that was desired by a customer. But he also testified that 90 per cent of this merchandise was sold in the condition in which it was imported. He did not testify that his customers were jobbers, manufacturers of jewelry, or retailers. He did not state that the merchandise could not be and was not used in the condition in which it was imported. So far as the testimony discloses, he may have sold the merchandise directly to the consumer.

The record is as consistent with the view that the merchandise is sold by the appellant to the consuming public, to be worn without clasps and without alteration by restringing, as it is with the supposition that it was sold to jobbers, manufacturers of jewelry, or retailers and was required to be restrung and clasps attached in order to be of practical use, as "strings of beads."

The collector classified the merchandise, for the purpose of determining whether it was legally marked in accordance with the provisions of section 304 (a), as consisting of "strings of beads"—that is, he found that the "articles" of importation were "strings of beads"; that they were susceptible of being marked; that they were not legally

marked; and accordingly assessed an additional duty of 10 per cent on the appraised value of such articles.

The action of the collector, on the trial before the Board of General Appraisers, was presumed to be correct.

The Board of General Appraisers found from the evidence that the "articles" of importation were "strings of beads."

We are unable to say, after careful examination of the record, that the Board of General Appraisers erred in its findings of fact.

The judgment is *affirmed.*